IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Luke Traylor, #271148, ) | |
| ) | C/A No. 0:09-48-RBH-PJG |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND** |
| Michael McCall, Perry Correctional Institution, ) | **RECOMMENDATION** |
| ) | |
| Respondent. ) | |
| _____ ) | |

The petitioner, Luke Traylor ("Traylor"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the respondent's motion for summary judgment. (Docket Entry 25.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised the petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (Docket Entry 27.) Traylor filed a response. (Docket Entry 31.) Having carefully considered the parties' submissions and the record in this case, the court finds that the respondent's motion should be granted and the Petition should be denied.

**BACKGROUND**

Traylor was indicted in August 2000 in York County for criminal conspiracy (00-GS-46-2591), assault and battery with intent to kill (00-GS-46-2593), and armed robbery (00-GS-46-2595). He was subsequently indicted in November 2000 for burglary, first degree (00-GS-46-2590) and two counts of assault and battery of a high and aggravated nature (00-GS-46-2592 & 00-GS-46-2594). (App. at 419-36, Docket Entry 26-5 at 23-40.) Traylor was represented by James W. Boyd, Esquire, and on November 28-30, 2000 was tried by a jury and found guilty as charged. (App. at 396-97,

Docket Entry 26-4 at 130-31.)  The circuit court sentenced Traylor to an aggregate term of thirty years' imprisonment.  (App. at 92, Docket Entry 26-5 at 14.)

Traylor appealed and was represented by Katherine Carruth Link, Esquire, of the South Carolina Office of Appellate Defense.  On March 8, 2002, Link filed a final brief in which she raised the following issues:

1. Did the trial court err in admitting the identifications of appellant, where both the photographic array and the identification procedure were unduly suggestive?

2. Did the trial court err in ruling redacted photographs admissible and in requiring appellant to make a choice as to admission of those photographs or the photographs actually used in the identification procedure?

(App. at 437-52, Docket Entry 26-5 at 41-57.)  On January 14, 2003, the South Carolina Court of Appeals reversed Traylor's conviction and remanded the case to the lower court.  (State v. Traylor, 03-UP-036 (S.C. Ct. App. January 14, 2003), App. at 469-74, Docket Entry 26-5 at 77 through Docket Entry 26-6 at 3.)  Both parties filed petitions for rehearing.  (App. at 475-87, Docket Entry 26-6 at 4-16.)  The South Carolina Court of Appeals denied both petitions.  (App. at 488, Docket Entry 26-6 at 17.)

Both parties filed petitions for a writ of certiorari with the South Carolina Supreme Court.  (App. at 489-504, 516-25, Docket Entry 26-6 at 18-33, 45-54.)  On October 22, 2003, the South Carolina Supreme Court granted both petitions and ordered full briefing on the issues.  (App. at 535, Docket Entry 26-6 at 65.)  On behalf of Traylor, Link filed a brief of petitioner on December 29, 2003 in which she presented the following issue:

Did the trial court err in ruling redacted photographs admissible and in requiring the defense to make a choice as to admission of those photographs or the photographs actually used in the identification procedure?

(App. at 539, Docket Entry 26-6 at 70.) The State filed a respondent's brief (App. at 584-600, Docket Entry 26-7 at 31-48) to which Traylor filed a reply (App. at 601-08, Docket Entry 26-7 at 49-57). The State filed its brief of petitioner of January 30, 2004 in which it presented the following issues:

> I. Whether the Court of Appeals erred in holding the identification procedure of having all victims in the same room individually review and identify Traylor from a photographic line-up, without interaction with each other, was unduly suggestive.
>
> II. Whether the Court of Appeals erred in holding the photographs used were "highly suggestive" because the photographs were "mug shots" that had names on the back and showed minor differences in height on a background chart. Case law prohibits the introduction of mug shots as evidence, but does not limit the use of mug shots in a photographic array.
>
> III. Whether the Court of Appeals erred in holding the identification was not reliable when each of the three victims identified Traylor, had actually viewed Traylor without an obscuring mask of any kind, in a well lighted room, for five to ten minutes, during the worst of the attack.

(App. at 553, Docket Entry 26-6 at 86.) Traylor filed a brief in opposition to the State's brief. (App. at 570-83, Docket Entry 26-7 at 15-29.) On June 22, 2004, the South Carolina Supreme Court heard oral argument on the case and issued an opinion on July 26, 2004 reversing the South Carolina Court of Appeals. State v. Traylor, 600 S.E.2d 523 (S.C. 2004); (App. at 609-14, Docket Entry 26-7 at 58-63).

On October 21, 2004, Traylor filed a petition for a writ of certiorari with the United States Supreme Court in which he presented the following issue:

> Do petitioner's convictions violate the constitutional guarantee of due process, since the identifications on which they were premised were the product of both an unduly suggestive identification procedure and an unduly suggestive group of photographs, which led to a substantial likelihood of misidentification?

(App. at 615-36, Docket Entry 26-7 at 64 through Docket Entry 26-8 at 6.) The United States Supreme Court denied certiorari. (App. at 665, Docket Entry 26-8 at 35.)

PJG

Traylor filed a *pro se* application for post-conviction relief ("PCR") on February 24, 2005. (Traylor v. State of South Carolina, 05-CP-46-491, App. at 666-73, Docket Entry 26-8 at 36-43.) In his application, Traylor raised the following issues:

(a) Impermissibly Suggestive Photo Identification Line-up;
(b) The manner in which the Line-up was conducted was also Suggestive;
(c) Ineffective Assistance of Counsel; and
(d) Subject Matter Jurisdiction violation;

(App. at 667, Docket Entry 26-8 at 37.) The State filed a return on August 17, 2005. (App. at 674-80, Docket Entry 26-8 at 44-50.) On February 12, 2007, the PCR court held an evidentiary hearing at which Traylor was present and testified and was represented by Tracey Reynolds, Esquire. (App. at 681-700, Docket Entry 26-8 at 51-70.) The PCR court dismissed Traylor's PCR application with prejudice by order filed February 15, 2007. (App. at 701-706, Docket Entry 26-8 at 71-76.) Specifically, the PCR court summarily dismissed Traylor's first two allegations on the grounds that these claims were direct appeal issues and were therefore procedurally barred pursuant to S.C. Code Ann. § 17-27-20(b). (App. at 702, Docket Entry 26-8 at 72.) Additionally, the PCR court ruled that Traylor did not meet his burden of proof on his multiple claims of ineffective assistance of trial counsel and that the circuit court did not lack subject matter jurisdiction. (App. at 703-706, Docket Entry 26-8 at 73-76.)

Traylor responded by filing a *pro se* document entitled "Notice of Motion and Motion Made Pursuant to Rule 59(e)." (App. at 707-12, Docket Entry 26-8 at 77-82.) The PCR court found Traylor's motion to be improper under South Carolina's prohibition of hybrid representation, but considered it as though it were properly presented and denied Traylor's motion. (App. at 713, Docket Entry 26-8 at 83.)

*PJG*

Traylor appealed the denial of relief and, through counsel Tommy A. Thomas, Esquire and Tricia A. Blanchette, Esquire, filed a petition for a writ of certiorari with the South Carolina Supreme Court raising the following issue:

> Whether trial counsel was ineffective when he failed to object to and/or file a post trial motion regarding the trial court's sentencing of the Petitioner.

([Docket Entry 26-9](#) at 3.) The State filed a return. ([Docket Entry 26-10](#).) On December 4, 2008 the South Carolina Supreme Court issued a letter order denying Traylor's petition. ([Docket Entry 26-11](#).) The remittitur was issued on December 22, 2008. ([Docket Entry 26-12](#).)

## FEDERAL HABEAS ISSUES

Traylor's federal petition for a writ of habeas corpus, quoted verbatim, raises the following issues:

> **Ground One:** Impermissably Suggestive Photo Mugshots
> **Supporting Facts:** The photo line-up used were mugshots. State had no demonstratable need to use the mugshots when any photo or driver's Liscense would've sufficed. The dates on Mugshots imply a prior arrest, which it shouldn't. I am the only one out of (5) five used in the line-up not wearing a placard, so it draws attention to the source. Victim Statement conflicts with the positive Id of the mugshot that was made of the Petitioner, two days after initial statement, which shows it's unreliability.
>
> **Ground Two:** Impermissably Suggestive Line-up procedure.
> **Supporting Facts:** All three victims sat together inside the Detective's office for the line-up procedure. Both Court of Appeals and State Supreme Court ruled the line-up as blatantly unacceptable and unduly suggestive. Both Court of Appeals and State Supreme Court also ruled Trial Judge erred in admitting the mugshots as evidence at trial. I feel the Neil v. Biggers inquiry shows the mugshots are a reversible error. The State Supreme Court ruled the procedure admissable solely because of their interpretation of reliability of the Identifications made by all three victims. I can show unreliability of one of the victims' identification, even as his testimony at trial swore certainty. Moreover, when does too many suggestive rulings have to be made simultaneously before the State realizes collectively, both the mugshots and the line-up procedure, is a reversible error?
>
> **Ground Three:** Trial counsel was Ineffective when he failed to object to and/or file a post-trial motion regarding the Trial Judge's Sentencing of Petitioner.



> **Supporting Facts:** Failing to challenge Trial Judge's Sentencing of Petitioner, lost a viable challenge to that sentence on Direct Appeal and State Supreme Court. By objecting to the sentencing, the Trial Court would have been coerced to give reason for the disparate sentence he gave te petitioner, versuses the other two co-defendants, of which one was the "mastermind," who only received 15 yrs. The higher courts could then have decided whether the disparate sentence received by petitioner was "fundamentally fair."

(Pet., Docket Entry 1 at 5-8) (errors in original).[1]

# DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

---

[1] On March 17, 2009, the court granted Traylor's motion to amend his Petition to add a fourth ground. Traylor subsequently withdrew that ground, conceding that it is procedurally barred from federal habeas review. (Docket Entry 31 at 16.)

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.   **Habeas Corpus Standard of Review**

   1.   **Generally**

In accordance with § 2254, claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court

factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2. Exhaustion Requirement

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth v. Ozmint, 377 F.3d 437 (4th Cir. 2004); see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

### C. Respondent's Motion for Summary Judgment

#### 1. Ground One

Traylor's first ground for relief in his Petition alleges that the photographs used in the line-up were impermissibly suggestive mug shots. In response to the respondent's motion for summary judgment, Traylor states that in this ground he is alleging that the trial judge erred in allowing impermissibly suggestive/tainted mug shots to be introduced as evidence at trial. (Docket Entry 31 at 2.) This issue, as clarified by Traylor, was presented to the state appellate courts on direct appeal. The South Carolina Supreme Court determined, under state law, that "admission of the mug shots

was error." (App. at 613, Docket Entry 26-7 at 62.) However, the state Supreme Court observed that Detective Robbins testified that the photograph of Traylor used in the line-up was taken upon his arrest. Further, trial counsel's cross-examination of Detective Robbins included "the fact that Traylor's photo did not have a date on the bottom because it had been taken shortly after his arrest on these charges." (Id.) For those reasons, the South Carolina Supreme Court concluded that although the admission of the mug shots was error, Traylor was not prejudiced by the admission and therefore reversal of his convictions was not warranted. (App. at 613-14, Docket Entry 26-7 at 62-63.)

Thus, the issue before the court on this ground is whether the South Carolina Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), (2). Stated differently, the court must determine whether the state Supreme Court unreasonably misapplied clearly established federal law in concluding that the error was harmless. Traylor appears to argue that the fact that the trial judge erred in admitting the photographs over counsel's objections was prejudicial. Upon review of the record, the court cannot say that the state Supreme Court unreasonably misapplied clearly established federal law in concluding that the trial court's error was harmless. See id.; Williams, 529 U.S. at 411. Moreover, Traylor fails to direct the court to any federal law which he contends the Supreme Court misapplied. Thus, Traylor is not entitled to federal habeas relief on this ground.

### 2. Ground Two

Ground Two of Traylor's Petition alleges that the line-up procedure was impermissibly suggestive. The line-up procedure that occurred in this matter appears to be undisputed. After the burglary, the victims provided statements to Detective Robbins which contained general information

regarding the identity of the assailants. Thereafter, one of the assailants, Hayes, was arrested and provided the identity of the other three assailants. Two days after the burglary, the victims went to Detective Robbins's office to take part in a photographic line-up. The Supreme Court summarized the procedure that occurred as follows:

> Robbins put together three separate groups of photographs, each containing 5-6 photos of different individuals; each set contained one photo of an individual identified by Hayes. The photos of Traylor (as well as the other accomplices), were all photos which had been processed after their arrest for this crime. Unlike the photos of the other four individuals in the group containing Traylor's photo, his photo does not have a sign beneath it showing an arrest date, and stating "Police Department-York, South Carolina." Additionally, all of the photos shown to the victims have numerical markings on the side, indicating a height in inches.
>
> Robbins testified that during the photographic line-up, the victims sat behind her desk in a semi-circle, several feet apart. She testified each victim was separately handed a group of pictures, and asked whether he could identify an assailant. Each victim would then hand the group of photos back to her, and indicate which person, if any, he recognized. During this time, there was no conversation between the victims as to who had been identified.
>
> Each of the photographs shown to the victims had a name on the back; however, Robbins stated the victims did not turn the photos over and look at the back of them. Further, although the victims had been told someone had been arrested, there is no indication they were aware of the identity or number of individuals arrested.

(App. at 610, Docket Entry 26-7 at 59.)

During the trial, it appears that Traylor moved to suppress the identification alleging that it was tainted because (1) the victims were sitting together when the identifications were made, (2) the name of each defendant was on the back of each photograph, (3) Traylor's photograph was different from the others because it lacked a date on the bottom and it did not state "Police Department-York County," and (4) the photographs reflect the individuals' heights. (App. at 611, Docket Entry 26-7 at 60.) The trial court denied the motion. On appeal, the South Carolina Supreme Court considered this issue and applied the two-part test announced in Neil v. Biggers, 409 U.S. 188, 199 (1970). The state Supreme Court determined that the identification process in this case was in fact unduly

suggestive. However, it concluded that there was not a substantial likelihood of irreparable misidentification after applying the following factors:

> (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the confrontation.[2]

(App. at 612, Docket Entry 26-7 at 61.) Specifically, the court noted that during the line-up the victims were seated several feet apart, they did not converse, they did not turn the photographs over to view the names on the back, and each victim was unaware of which photographs the other victims identified. It considered the length of time that each victim witnessed the assailant, the accuracy of their descriptions, the fact that the victims were quite certain of their identifications, and the fact that only two days passed between the crime and the identifications. Therefore, the Supreme Court determined that under the circumstances of this case, the identifications did not need to be excluded and reversal of Traylor's conviction was not warranted.

In Neil v. Biggers, 409 U.S. 188 (1970), the United States Supreme Court held that the Due Process Clause requires the exclusion at trial of evidence of a pre-trial identification of a person if, based on the totality of the circumstances, the procedure used to obtain the identification was *both* (1) unnecessarily suggestive and (2) conducive to mistaken identification. Id. at 199-200. The Court further held that in determining the reliability of an identification, a court is to consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time

---

[2] These are the same factors that were outlined in the United States Supreme Court case, Neil v. Biggers, 409 U.S. 188, 199 (1970).

between the crime and confrontation. Id. The state Supreme Court applied this test and these factors.

In support of his Petition, Traylor appears to argue that because the identification procedure was unduly suggestive, there was a substantial likelihood of misidentification. However, the United States Supreme Court has specifically declined to adopt such a *per se* rule—i.e. that unnecessary suggestiveness alone requires the exclusion of evidence. Neil, 409 U.S. at 198-99. Traylor further contends that a victim statement of one of the three victims failed to include any distinguishing characteristics of the white assailant,[3] but his testimony at trial included more specificity. Specifically, the victim's statement stated that his face was covered, but at trial the victim testified that the assailant had a long and thin face. Traylor alleges that this fact decreases the reliability of this victim's statement. Even considering this argument, it affects only one of five factors and only applies to one of three victims. The South Carolina Supreme Court explicitly considered and discussed each of the five factors. Upon review of the record in this matter and the parties' filings, the court finds that Traylor cannot demonstrate based on the totality of the circumstances that the photographic line-up procedure violated Neil and that the South Carolina Supreme Court unreasonably misapplied federal law. See 28 U.S.C. § 2254(d)(1), (2); Williams, 529 U.S. at 411. Therefore, Traylor is not entitled to federal habeas relief on this ground.

   3.   **Ground Three**

In Ground Three, Traylor alleges that trial counsel was ineffective in failing to object to Traylor's sentence or file a post-trial motion regarding his sentence. In support of this ground,

---

[3] Only one of the four assailants was identified as white, and the victims identified Traylor as that assailant.

Traylor alleges that he received a disparate sentence from his co-defendants and that if trial counsel had raised this objection, the trial court or the appellate courts would have considered this issue.

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams, 529 U.S. at 391 (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The PCR court considered this issue and determined that it was without merit. However, the PCR court did not articulate the rationale behind this ruling; therefore, the court will independently considered the record and applicable law. Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000).

*PJG*

At the PCR hearing, Traylor testified that he received a thirty-year sentence, while his co-defendants received less than half that time. He also testified that he declined a plea offer due to the fact that he was afraid to testify against one of his co-defendants, which was a condition of the plea. (App. at 688, Docket Entry 26-8 at 58.) Trial counsel stated that he did not believe grounds existed to seek reconsideration because the sentence was within the statutory parameters and the fact that the co-defendants received lesser sentences is not a ground for reconsideration. Further, trial counsel stated that he believed that the co-defendants received less time because they cooperated with the authorities. (App. at 696-97, Docket Entry 26-8 at 66-67.) On appeal to the state appellate courts, Traylor argued that trial counsel should have sought reconsideration based on the fact that the "master-mind" received a sentence of fifteen years and Traylor was previously offered a plea of ten years. He also alleged that based on South Carolina law, it is an abuse of discretion for the sentencing court to punish a defendant for exercising his right to a jury trial and that trial counsel's failure to object prevented Traylor from preserving this argument. In response, the State pointed out that trial counsel offered mitigation at the sentencing hearing for the trial court to consider such as: Traylor's age and intelligence, the fact that Traylor was not the person who cut the victim and that the defendant who did so received a fifteen-year sentence, and the testimony of Traylor's family. Further, the State stated that the trial court was informed by the solicitor of the sentences previously received by two of Traylor's co-defendants.

The record reveals that Traylor was on probation at the time of the trial and sentencing. (App. at 404, Docket Entry 26-5 at 7.) Traylor's probation officer testified that Traylor had violated two of the conditions of his probation and failed to pay restitution. (App. at 406, Docket Entry 26-5 at 9.) His prior record included a March 1997 juvenile adjudication for malicious injury to property and assault and battery; a June 1997 adjudication for possession of a sawed-off shotgun; and a 1998

adjudication for breaking and entering and malicious injury to personal property. (App. at 404, Docket Entry 26-5 at 7.) During the sentencing hearing, the trial judge requested information on the dispositions of the co-defendants' charges. One of the co-defendants who was fifteen pled guilty in family court and received a sentence of thirty-six months. The other co-defendant, who Traylor alleges was the "master-mind," pled guilty to burglary, second degree; assault and battery with intent to kill; two counts of assault and battery of a high and aggravated nature; and criminal conspiracy, with no recommendation from the State. He received a fifteen-year sentence from a different circuit judge. (App. at 405, Docket Entry 26-5 at 8.)

As an initial matter, "a criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants." United States v. Smith, 839 F.2d 175, 179 (3d Cir. 1988) (citing generally Dorszynski v. United States, 418 U.S. 424, 440-41 (1974)); see also United States v. Jackson, 959 F.2d 81, 83 (8th Cir. 1992) (affirming a defendant's sentence although it was twice as long as that received by the conspiracy ringleader who entered a plea agreement and cooperated with government). South Carolina state law provides that it is improper for a trial judge to impose a disparate sentence upon two similarly situated defendants based on the fact that one defendant exercised his right to a jury trial while the other one pled guilty. See Davis v. State, 520 S.E.2d 801, 802-803 (S.C. 1999); State v. Brouwer, 550 S.E.2d 915, 922 (S.C. Ct. App. 2001). However, based on the record, there is no evidence to support any assertion that Traylor was similarly situated to his co-defendants. Moreover, there is nothing in the record to suggest that the sentencing court improperly imposed a longer sentence on Traylor based on the fact that he sought a jury trial. See Smith, 839 F.2d at 179 (stating that it was not an abuse of discretion to impose disparate sentences based on "valid differences in circumstances"); State v. Follin, 573 S.E.2d 812, 824 (S.C. Ct. App. 2002) (stating that "when the record clearly reflects an appropriate basis for a

disparate sentence, the sentencing judge may impose a different sentence on a co-defendant in a criminal trial"). With regard to Traylor's allegations that pertain to the plea offer, there is no constitutional right to plea bargain, much less a constitutional right to a specific plea bargain. Weatherford v. Bursey, 429 U.S. 545, 561 (1977). Similarly, there is no constitutional restriction preventing the solicitor from offering benefits in return for a plea. Corbitt v. New Jersey, 439 U.S. 212, 218-20 (1978).

Based on the foregoing, even assuming that trial counsel was deficient in failing to object to Traylor's sentence or file a post-trial motion, Traylor cannot demonstrate that such a motion would have been successful. Thus, Traylor cannot demonstrate that he was prejudiced as a result of his counsel's alleged deficiency and, therefore, he cannot satisfied the second prong of Strickland. Traylor has not presented any evidence to demonstrate a reasonable probability that the result of the proceeding would have been different if his counsel had objected to the sentence. Strickland, 466 U.S. at 694. Further, none of the presumptively prejudicial factors are present in this matter. See Cronic, 466 U.S. at 659. Moreover, Traylor has not shown that the PCR court's analysis of this issue, or the appellate court's decision to deny certiorari, misapplied clearly established federal law or, even if there was an error, that it was unreasonable. See Williams, 529 U.S. at 411. Therefore, Traylor is not entitled to federal habeas relief on this ground.

*PJG*

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (Docket Entry 25) be granted. In light of the court's recommendation, the court further recommends that any pending motions (Docket Entry 32) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 15, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).