IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Luke Traylor, | ) | Civil Action No.: 0:09-cv-00048-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Michael McCall, *Perry Correctional Institution*, | ) ) | |
| | ) | |
| Respondent. | ) ) | |

This matter is before the court with Petitioner's [Docket Entry 51] Motion for Reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and his [Docket Entry 52] Objections to the Magistrate Judge's [Docket Entry 38] Report and Recommendation ("R & R"), both having been filed on April 1, 2010.[1]  Petitioner asks the court to reconsider its [Docket Entry 47] Order entered on March 23, 2010, which granted Respondent's summary judgment motion.  After reviewing Petitioner's Objections, and for the reasons set out below, the court denies Petitioner's Motion for Reconsideration.

**Background**

In late 2000, in York County, South Carolina, Petitioner was indicted for criminal conspiracy, assault and battery with intent to kill, armed robbery, burglary–first degree, and two counts of assault and battery of a high and aggravated nature. *See* App. [Docket Entry 26-5] at 23-40.  Petitioner was tried by a jury on November 28-30, 2000, and ultimately found guilty as charged. *See* App. [Docket Entry 26-4] at 130-31.  James W. Boyd, Esquire, represented Petitioner at trial. *See* § 2254 Petition

---

[1] Filing date under *Houston v. Lack*, 487 U.S. 266 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to district court).

[Docket Entry 1] at 12. The trial court sentenced Petitioner to imprisonment for a term of thirty (30) years. *See* App. [Docket Entry 26-5] at 14.

Petitioner filed a direct appeal, in which he was represented by Katherine Carruth Link. *Id.* at 41. Petitioner raised the following two issues on direct appeal:

1. Did the trial court err in admitting the identifications of appellant, where both the photographic array and the identification procedure were unduly suggestive?

2. Did the trial court err in ruling redacted photographs admissible and in requiring appellant to make a choice as to admission of those photographs or the photographs actually used in the identification procedure?

*Id.* at 45. On January 14, 2003, the South Carolina Court of Appeals reversed Petitioner's conviction and remanded the case to the trial court. *Id.* at 77 through App. [Docket Entry 26-6] at 3. Thereafter, both parties filed petitions for rehearing, which were denied by the South Carolina Court of Appeals. App. [Docket Entry 26-6] at 4-17.

Both parties then filed petitions for a writ of certiorari with the South Carolina Supreme Court. *Id.* at 18-33, 45-54. On October 22, 2003, the South Carolina Supreme Court "grant[ed] [] both petitions for writs of certiorari to review the Court of Appeals' decision in State v. Traylor, Op. No. 2003-UP-036 (S.C. Ct. App. filed January 14, 2003)," and ordered full briefing on the issues. *Id.* at 65. Petitioner, through Attorney Link, raised the following issue upon certiorari to the South Carolina Supreme Court:

Did the trial court err in ruling redacted photographs admissible and in requiring the defense to make a choice as to admission of those photographs or the photographs actually used in the identification procedure?

*Id.* at 70. The State, on the other hand, presented the following issues:

I. Whether the Court of Appeals erred in holding the identification procedure

2

>   of having all victims in the same room individually review and identify Traylor from a photographic line-up, without interaction with each other, was unduly suggestive.
>
> II. Whether the Court of Appeals erred in holding the photographs used were "highly suggestive" because the photographs were "mug shots" that had names on the back and showed minor differences in height on a background chart. Case law prohibits the introduction of mug shots as evidence, but does not limit the use of mug shots in a photographic array.
>
> III. Whether the Court of Appeals erred in holding the identification was not reliable when each of the three victims identified Traylor, had actually viewed Traylor without an obscuring mask of any kind, in a well lighted room, for five to ten minutes, during the worst of the attack.

*Id.* at 86. After having heard oral argument, the South Carolina Supreme Court issued an opinion on July 26, 2004, reversing the South Carolina Court of Appeals. *See* App. [Docket Entry 26-7] at 58-63; *see also State v. Traylor*, 600 S.E.2d 523 (S.C. 2004).

On October 21, 2004, Petitioner filed a petition for writ of certiorari with the United States Supreme Court raising the following issue:

> Do petitioner's convictions violate the constitutional guarantee of due process, since the identifications on which they were premised were the product of both an unduly suggestive identification procedure and an unduly suggestive group of photographs, which led to a substantial likelihood of misidentification?

App. [Docket Entry 26-7] at 65. The United States Supreme Court denied certiorari. App. [Docket Entry 26-8] at 35.

Petitioner filed a *pro se* application for post-conviction relief ("PCR") on February 24, 2005. *Id.* at 36-43. In the PCR application, Petitioner raised the following issues:

> (a) Impermissibly Suggestive Photo Identification Line-up
> (b) The manner in which the Line-up was conducted was also Suggestive
> (c) Ineffective Assistance of trial counsel, and
> (d) Subject Matter Jurisdiction Violation[.]

*Id.* at 37. The State filed a return on August 17, 2005. *Id.* at 44-50. After holding an evidentiary hearing at which Petitioner testified and was represented by counsel, the PCR Court dismissed Petitioner's PCR application with prejudice by order filed February 15, 2007. *Id.* at 71-76. Specifically, the PCR Court summarily dismissed Petitioner's first two allegations on the grounds that these claims were "direct appeal issues and procedurally barred by Section 17-27-20(b) of the South Carolina code." *Id.* at 72. In addition, the PCR Court ruled that the trial court did not lack subject matter jurisdiction and that Petitioner did not meet his burden of proof on his ineffective assistance of counsel claims. *Id.* at 73-76.

Petitioner thereafter *pro se* filed a document entitled "Notice of Motion and Motion Made Pursuant To Rule 59(e)." *Id.* at 77. While noting that "hybrid representation" is not allowed, the PCR court "considered the motion as though properly presented" and denied the motion. *Id.* at 83.

Petitioner appealed the PCR Court's Order by filing a petition for a writ of certiorari with the South Carolina Supreme Court. Petition for Writ [Docket Entry 26-9]. The petition raised the following issue:

> Whether trial counsel was ineffective when he failed to object to and/or file a post trial motion regarding the trial court's sentencing of the Petitioner.

*Id.* at 3. On December 4, 2008, the South Carolina Supreme Court denied Petitioner's petition by way of a letter order. Letter Order [Docket Entry 26-11]. Remittitur was issued on December 22, 2008. Remittitur [Docket Entry 26-12].

On January 5, 2009,[2] Petitioner, proceeding *pro se*, filed this action pursuant to 28 U.S.C. § 2254. Respondent filed his [Docket Entry 25] Motion for Summary Judgment on June 15, 2009,

---

[2] Filing date under to *Houston v. Lack*, 487 U.S. 266.

along with a return and memorandum, [Docket Entry 26]. Because Petitioner is proceeding *pro se*, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on June 16, 2009, advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to adequately respond. On July 10, 2009,[3] Petitioner timely filed his [Docket Entry 31] Response in Opposition to the summary judgment motion.

On February 16, 2010, United States Magistrate Judge Paige J. Gossett[4] issued her R & R, in which she recommended that "respondent's motion for summary judgment (Docket Entry 25) [should] be granted." R & R at 17. Thereafter, on March 1, 2010,[5] Petitioner sought an extension of time in which to file his objections to the R & R. Motion [Docket Entry 40]. The undersigned subsequently issued a Text Order extending Petitioner's time to file objections until March 12, 2010. *See* Text Order [Docket Entry 41]. On March 12, 2010,[6] Petitioner again sought an extension of time in which to file his objections. *See* Motion [Docket Entry 45]. The court granted Petitioner's motion and extended his deadline for filing objections until March 22, 2010; however, the undersigned's text order advised Petitioner that "[n]o further extensions [would] be granted." Text Order [Docket Entry 46]. The court did not receive any objections to the R & R by the March 22 deadline.

On March 23, 2010, the court entered its [Docket Entry 47] Order which adopted the R & R of the Magistrate Judge and granted Respondent's summary judgment motion. That Order also denied any pending motions and denied Petitioner a certificate of appealability. *See id.* at 2. The

---

[3] Filing date under *Houston v. Lack*, 487 U.S. 266.

[4] This matter was referred to Magistrate Judge Gossett pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2), D.S.C.

[5] Filing date under *Houston v. Lack*, 487 U.S. 266.

[6] Filing date under *Houston v. Lack*, 487 U.S. 266.

Clerk's Office entered summary judgment accordingly on that same date. *See* Judgment [Docket Entry 48].

On March 24, 2010, the court entered a subsequent order that stated the following, in pertinent part:

> After the entry of the order dismissing the case, the Court was advised by the Clerk of Court that this Court's order granting in part the petitioner's second motion for extension of time to file objections until March 22, 2010 had not been mailed to the petitioner. Because the order extending time was not mailed, through error by the Clerk's Office, this Court is now unclear as to what additional time, if any, the petitioner needs to file objections. The Court notes that, even though Petitioner has not received the order extending time, he still has apparently made no attempt to file any objections. The Court cannot tell if he even has any objections to the Report.
> However, under the circumstances, the Court will consider a timely filed motion to reconsider which includes his objections to the Report, if any. The Clerk is directed to mail this Order, as well as Docket Entry #46 granting in part the motion for extension of time and Docket Entry Number 47, Order granting Motion for Summary Judgment and denying Motion to Appoint Counsel to the petitioner.

March 24 Order [Docket Entry 49] at 1-2. On April 1, 2010,[7] Petitioner filed his Motion for Reconsideration, along with his objections to the Magistrate Judge's R & R. The court will now consider those objections to the R & R as if they had been timely filed.

## **Federal Habeas Issues**

Petitioner's § 2254 Petition, quoted verbatim, raises the following issues:

**Ground One:** Impermissably Suggestive Photo Mugshots

> **Supporting Facts:** The photo line-up used were mugshots. State had no demonstratable need to use the mugshots when any photo or driver's liscense would've sufficed. The dates on Mugshots imply a prior arrest, which it shouldn't. I am the only one out of (5) five used in the line-up not wearing a placard, so it draws attention to the Source. Victim Statement conflicts with the positive Id of the mugshot that was made of the Petitioner, two days after initial statement, which shows it's unreliability.

---

[7] Filing date under *Houston v. Lack*, 487 U.S. 266.

>**Ground Two:** Impermissably Suggestive Line-up procedure
>
>>**Supporting Facts:** All three victims sat together inside the Detective's office for the line-up procedure. Both Court of Appeals and State Supreme Court ruled the line-up as blatantly unacceptable and unduly suggestive. Both Court of Appeals and State Supreme Court also ruled Trial Judge erred in admitting the mugshots as evidence at trial. I feel the Neil v. Biggers inquiry shows the mugshots are a reversible error. The State Supreme Court ruled the procedure admissable solely because of their interpretation of reliability of the Identifications made by all three victims. I can show unreliability of one of the victims' identification, even as his testimony at trial swore certainty. Moreover, when does too many suggestive rulings have to be made simultaneously before the State realizes, collectively, both the mugshots and the line-up procedure, is a reversible error?
>
>**Ground Three:** Trial Counsel was Ineffective when he failed to object to and/or file a post-trial motion regarding the Trial Judge's Sentencing of Petitioner.
>
>>**Supporting Facts:** Failing to challenge Trial Judge's Sentencing of Petitioner, lost a viable challenge to that Sentence on Direct Appeal and State Supreme Court. By objecting to the Sentencing, the Trial Court would have been forced to give reason for the disparate Sentence he gave the petitioner, versus the other two co-defendants, of which one was the "master-mind," who only received 15 yrs. The higher courts could then have decided whether the disparate Sentence received by petitioner was "fundamentally fair."

§ 2254 Petition [Docket Entry 1] at 5-8 (errors in original).[8]

### **Standard of Review of Magistrate Judge's R & R**

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may

---

[8] On March 17, 2009, the Magistrate Judge granted Petitioner's motion to amend his § 2254 Petition to include a fourth ground. However, Petitioner subsequently withdrew the fourth ground, conceding that the claim was procedurally barred. *See* Response in Opposition at 16.

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### Habeas Corpus Standard of Review

Petitioner brought this action pursuant to 28 U.S.C. § 2254. Section 2254 states in pertinent part that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id* § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s

"contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08.

## Discussion

I.  Ground One

As clarified in Petitioner's Response in Opposition to the summary judgment motion,[9] Petitioner argues in Ground One that the introduction of his mug-shot as evidence at trial created reversible error under *State v. Tate*, 341 S.E.2d 380 (S.C. 1986). Petitioner presented this issue to the state appellate courts on direct appeal.

Under *Tate*, a South Carolina Supreme Court case, the introduction of a mug-shot at trial is reversible error unless:

> (1) The state had a demonstrable need to introduce the photograph; and (2) the photographs themselves, if shown to the jury, must not imply that the defendant had a prior criminal record; and (3) the photograph must not be introduced in such a

---

[9] In his Response in Opposition, Petitioner clarified Ground One by stating the following:

> We need not look at the identification procedure at this time. That is a completely different and separate issue.
> This issue is a simple example of what a reversible error is under the Tate inquiry, which deals solely with the introduction of a mugshot of a defendant at trial, and has nothing concerning any identification procedure(s).

Response in Opposition at 3-4. Petitioner concluded that "the above argument, and under the Sep[a]rate and Independent Inquiry dealing with the Introduction of a mugshot in State v. Tate, enough prejudice exists to warrant, at least, a reversal ruling." *Id.* at 6.

9

manner to draw attention to the source or implication of the photograph.
*Tate*, 341 S.E.2d at 381. In Petitioner's case, the South Carolina Supreme Court found that, under *Tate*, "admission of the mug shots was error" because the State had "no demonstrable need to introduce the photo lineup." App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 528. However, the South Carolina Supreme Court also observed that Detective Sarah Robbins testified before the jury at trial "that the photograph of [Petitioner] which she showed to the victims during the line-up was taken upon his arrest." App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 528. Further, the Supreme Court noted that Petitioner's trial counsel "specifically cross-examined Robbins regarding the fact that [Petitioner's] photo did not have a date on the bottom because it had been taken shortly after his arrest on these charges." App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 528. For those reasons, the Supreme Court ultimately held that Petitioner was not prejudiced by the admission of his mug-shot and therefore reversal of his convictions was not warranted. App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 528.

In her R & R, the Magistrate Judge determined that "the court cannot say that the state Supreme Court unreasonably misapplied clearly established federal law in concluding that the trial court's error was harmless." R & R at 9. The court agrees. Petitioner does not direct the court to any federal law which he contends the South Carolina Supreme Court misapplied, nor does the court find, upon a review of the record, that the state Supreme Court unreasonably misapplied any federal law in making its determination under *Tate*. Moreover, while Petitioner argues that "it is conceivable that the [South Carolina Supreme] Court failed to conduct a harmless error analysis,"[10] the Supreme Court did, in fact, determine that "no prejudice" resulted from the introduction of the

---

[10] Obj. [Docket Entry 52] at 10.

mug-shots. App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 528. Accordingly, the court adopts the recommendation of the Magistrate Judge and finds that Petitioner is not entitled to habeas relief on Ground One.

II.     Ground Two

In Ground Two, Petitioner argues that the photographic line-up procedure used by the police was impermissibly suggestive. The line-up procedure utilized in this matter appears to be undisputed. After the burglary, the three victims–Javier, Marcos, and Alfredo–went to Detective Robbins' office at the police station. The South Carolina Supreme Court summarized the line-up procedure that occurred thereafter as follows:

> Robbins put together three separate groups of photographs, each containing 5-6 photos of different individuals; each set contained one photo of an individual identified by Hayes. The photos of Traylor (as well as the other accomplices), were all photos which had been processed after their arrest for this crime. Unlike the photos of the other four individuals in the group containing Traylor's photo, his photo does not have a sign beneath it showing an arrest date, and stating "Police Department-York, South Carolina." Additionally, all of the photos shown to the victims have numerical markings on the side, indicating a height in inches.
> Robbins testified that during the photographic line-up, the victims sat behind her desk in a semi-circle, several feet apart. She testified each victim was separately handed a group of pictures, and asked whether he could identify an assailant. Each victim would then hand the group of photos back to her, and indicate which person, if any, he recognized. During this time, there was no conversation between the victims as to who had been identified.
> Each of the photographs shown to the victims had a name on the back; however, Robbins stated the victims did not turn the photos over and look at the back of them. Further, although the victims had been told someone had been arrested, there is no indication they were aware of the identity or number of individuals arrested.

App. [Docket Entry 26-7] at 59; *see also Traylor*, 600 S.E.2d at 524-25. All three victims testified at trial that they identified the photograph of Petitioner as the white male assailant. App. [Docket Entry 26-7] at 59-60; *see also Traylor*, 600 S.E.2d at 525-26.

11

At trial, Petitioner moved to suppress the victims' identifications as being tainted, arguing the following: (1) the victims were sitting together in Detective Robbins' office when they made the identifications; (2) the name of each defendant was on the back of each photograph; (3) Petitioner's photograph was different from the other photographs because it lacked a date and did not state "Police Department-York County;" and (4) the photographs indicated the defendants' heights. *See* App. [Docket Entry 26-7] at 60; *see also Traylor*, 600 S.E.2d at 526. While the State "concede[d] that ideally during the lineups the victims would have been shown the lineups separately," it maintained that the line-up procedure was not impermissibly suggestive and that the identifications were reliable. App. [Docket Entry 26-2] at 3-4. Based on the totality of the circumstances, the trial court denied Petitioner's motion to suppress. *Id.* at 5-6.

On appeal, the South Carolina Supreme Court considered and ruled upon this exact issue. In doing so, it applied the two-part test announced in *Neil v. Biggers*, 409 U.S. 188 (1970). Initially, the South Carolina Supreme Court determined that "the line-up procedure utilized in this case was patently suggestive." App. [Docket Entry 26-7] at 61; *see also Traylor*, 600 S.E.2d at 527. However, the court ultimately concluded that the line-up procedure did not "give rise to a substantial likelihood of irreparable misidentification," after applying the following factors:

> (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

App. [Docket Entry 26-7] at 61; *see also Traylor*, 600 S.E.2d at 527. More specifically, the court noted that, according to the testimony of the victims and Detective Robbins, during the line-up the victims were seated several feet apart, they did not converse, they did not turn the photographs over

to see the information on the back, and they were unaware of which photographs the other victims had identified. App. [Docket Entry 26-7] at 61; *see also Traylor*, 600 S.E.2d at 527. In addition, the court considered the length of time the victims were able to view the Petitioner during the crime (anywhere from one (1) minute to ten (10) minutes), the accuracy of their descriptions (all three victims described the white assailant as being "tall and slim"), the level of the victims' certainty, and the fact that the identifications were made only two (2) days after the incident. App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 527. Based thereon, the court concluded that "although [it] [could not] condone the manner in which the photographic line-up in this case was performed, there [was] simply not a substantial likelihood of irreparable misidentification, such that the trial court properly allowed the identification." App. [Docket Entry 26-7] at 62; *see also Traylor*, 600 S.E.2d at 528.

The United States Supreme Court has held that the Due Process Clause requires the exclusion at trial of evidence of a pre-trial identification of a person if, based on the totality of the circumstances, the identification procedure utilized was *both* (1) unnecessarily suggestive and (2) conducive to a misidentification. *Biggers*, 409 U.S. at 199-200. "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir. 1997). However, even if unnecessarily suggestive, the court must then look at the five factors enunciated in *Biggers* to determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199. The factors to be considered in determining the reliability of an identification are:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2]

>    the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Id.* at 199-200.

In her R & R, the Magistrate Judge concluded that Petitioner was not entitled to federal habeas relief on this ground. The court agrees. Petitioner appears to repeatedly make the argument that because the identification procedure was unnecessarily suggestive, there was a substantial likelihood of misidentification. *See* Obj. [Docket Entry 52] at 10 ("Surely there is a reasonbl[e] possibility of [the simultaneous viewing during the line-up procedure] triggering the substantial likelihood of irreparable misidentification."). However, the United States Supreme Court has specifically declined to adopt such a "strict rule barring [all] evidence of unnecessarily suggestive confrontations." *See Biggers*, 409 U.S. at 199. Rather, the "central question" to be answered is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* Additionally, Petitioner contends that the South Carolina Supreme Court unreasonably determined the facts regarding the amount of time which the victims were able to view Petitioner during the crime. A review of the trial court record, however, reveals that the Supreme Court's Opinion was consistent with the victims' testimony at trial.[11] Further, Petitioner contends that Javier's testimony at trial regarding identifying characteristics of Petitioner was more specific than the statement Javier gave to police authorities immediately after

---

[11] For example, the South Carolina Supreme Court wrote that Alfredo was able to view Petitioner for one (1) minute during the crime, (App. [Docket Entry 26-7] at 62), but Petitioner contends that Alfredo's testimony actually was that he viewed Petitioner for only a "few seconds." Obj. [Docket Entry 52] at 12. In fact, at trial, Alfredo was asked, "During the time that [Petitioner] was in the room how long were you able to look at him," to which Alfredo answered, "About a minute." App. [Docket Entry 26-1] at 69. Similarly, the Supreme Court wrote that Javier was able to view the Petitioner for five (5) minutes, and, in fact, Javier testified at trial that he was able to view Petitioner "[a]bout five minutes." *Id.* at 82.

the incident.[12] Petitioner alleges that this fact decreases the reliability of Javier's statement and identification. Even considering this argument, it does not affect all five factors and only applies to one of the three victims.

The court has reviewed the record, including the testimony of Detective Robbins and the three victims, and the court cannot say that the victims' identification of Petitioner was so unnecessarily suggestive and conducive to irreparable misidentification that Petitioner was denied due process of law. The trial court and the South Carolina Supreme Court meticulously considered each of the factors set forth in *Biggers* and determined that the identification evidence was reliable. The South Carolina Supreme Court's ultimate decision was not unreasonable nor contrary to clearly established federal law. Thus, Petitioner is not entitled to habeas relief on this ground.[13]

---

[12] Petitioner also argues in his objections that the Magistrate Judge failed to consider Javier's original statement to the police authorities when making her recommendation regarding summary judgment. Although Petitioner discussed Javier's original statement in his Response in Opposition to the summary judgment motion, it does not appear that he actually included the statement as an exhibit until his objections. *See* Exhibit [Docket Entry 52-1] at 3-4. Regardless, the Magistrate Judge did, in fact, consider Petitioner's arguments relating to Javier's original statement when making her summary judgment determination. Specifically, the Magistrate Judge stated the following in her R & R:

> [Petitioner] further contends that a victim statement of one of the three victims failed to include any distinguishing characteristics of the white assailant, but his testimony at trial included more specificity. Specifically, the victim's statement stated that his face was covered, but at trial the victim testified that the assailant had a long and thin face. [Petitioner] alleges that this fact decreases the reliability of this victim's statement. Even considering this argument, it affects only one of five factors and only applies to one of three victims.

R & R at 12. Accordingly, this objection is without merit.

[13] Petitioner cites *Fry v. Pliler*, 551 U.S. 112 (2007), and asks the court to conduct an independent analysis of any prejudice. In *Fry*, the United States Supreme Court held "that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard . . ., whether or not the state appellate court recognized the error and reviewed it for harmlessness . . . ." *Id.* at 121-22. Petitioner's objection, however, misses the mark and assumes that the undersigned has found that constitutional error has occurred. To the contrary, the South Carolina Supreme Court, applying the *Biggers* factors, found that no due process violation occurred because the line-up procedure was reliable, and the undersigned, having reviewed the entire record, agrees that no constitutional violation occurred. Accordingly, it must necessarily follow that because no constitutional violation has

15

III.    Ground Three

In Ground Three, Petitioner alleges that trial counsel was ineffective in failing to object to Petitioner's sentence or file a post-trial motion regarding his sentence. To establish ineffective assistance of counsel, a petitioner must satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).

The Magistrate Judge thoroughly analyzed Petitioner's ineffective assistance of counsel claim in the R & R. *See* R & R at 12-16. Ultimately, the Magistrate Judge concluded that Petitioner could not :

> demonstrate that he was prejudiced as a result of his counsel's alleged deficiency, and, therefore, he cannot satisf[y] the second prong of Strickland. . . . Moreover, [Petitioner] ha[d] not shown that the PCR court's analysis of this issue, or the appellate court's decision to deny certiorari, misapplied clearly established federal law or, even if there was an error, that it was unreasonable.

*Id.* at 16. Accordingly, the Magistrate Judge recommended that Petitioner "is not entitled to federal habeas relief on this ground." *Id.*

Petitioner did not file any objections as to this recommendation. While Petitioner did file objections, none of the objections related to his ineffective assistance of counsel claim. Thus, finding no clear error on the face of the record, the Magistrate Judge's recommendation is adopted. *See Diamond*, 416 F.3d at 315. Additionally, in the interests of justice, the court has reviewed *de*

---

occurred, there can be no resulting prejudice.
    Moreover, while this objection appears to relate only to Ground Two, to the extent it could be construed as relating additionally to Ground One, the court finds that even if any constitutional error stemmed from the admission of the mug-shots into evidence at trial, it did not have a "substantial and injurious effect . . . in determining the jury's verdict." *Brecht v. Anderson*, 507 U.S. 619, 637 (1993) (internal quotations and citations omitted). This is based on the fact that Detective Robbins testified before the jury at trial that the photograph of Petitioner, which was shown to the victims during the line-up, was taken upon his arrest and that Petitioner's trial counsel specifically cross-examined Detective Robbins regarding the fact that the photo did not have a date on the bottom because it had been taken shortly after Petitioner's arrest on the charges at issue in this matter.

*novo* Petitioner's ineffective assistance claim and finds that it is without merit for the same reasons as stated by the Magistrate Judge.

### Conclusion

Based on the foregoing and for the reasons stated by the Magistrate Judge in her R & R, which this Order hereby adopts in part[14] and incorporates by reference herein, Petitioner's Motion for Reconsideration is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

                                                s/R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

Florence, South Carolina
January 25, 2011

---

[14] The Magistrate Judge's R & R recommended granting summary judgment in favor of Respondent. However, this Order relates to Petitioner's Motion for Reconsideration, rather than that previously ruled upon summary judgment motion. Accordingly, the court adopts the R & R only in part, insofar as its reasoning and analysis support the denial of the reconsideration motion.